UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY BROWN, | ) |
| Plaintiff(s), | ) |
| vs. | ) |
| CRST MALONE, INC., | ) Case No. 4:11CV1527 JCH |
| Defendant/Third-Party Plaintiff, | ) |
| vs. | ) |
| AMS STAFF LEASING, N.A. LTD., | ) |
| Third-Party Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant CRST Malone, Inc.'s Motion for Summary Judgment, filed on July 30, 2012. ("Motion for Summary Judgment," ECF No. 72). This motion is fully briefed and ready for disposition.

## **BACKGROUND**

Plaintiff Larry Brown ("Plaintiff" or "Brown") was a self-employed owner-operator of a truck who contracted with Defendant CRST Malone, Inc. ("Defendant" or "CRST") to provide delivery services. (Statement of Undisputed Material Facts in Support of CRST's Motion for Summary Judgment ("Defendant's SUMF"), ECF No. 73-1, ¶ 1). Plaintiff worked for Defendant from July 1998 through October 2007. (Complaint, ECF No. 4, ¶ 3).

On September 11, 2001, Associated Contract Truckmen, Inc. ("ACT") presented a "Sponsoring Motor Carrier Request for Proposal of Statutory Workers Compensation Program for Contractors" ("RFP") to CRST. (Defendant's SUMF, ¶ 2; Plaintiff Larry Brown's Admissions,

Denials and Averments of Defendant CRST Malone, Inc.'s Allegedly Undisputed Statements of Material Facts ("Plaintiff's Response to Defendant's SUMF"), ECF No. 79, p. 2; RFP, ECF No. 77-6, p. 1). In the RFP, ACT offered to provide workers' compensation insurance to CRST's owner-operators. (Defendant's SUMF, ¶ 2; RFP, p. 1). The RFP also stated that, to assist ACT in providing such insurance, CRST would provide enrollment documents to the owner-operators, withhold premiums from the owner-operators' paychecks, and remit the premiums to ACT. (Defendant's SUMF, ¶ 2; RFP, p. 1). CRST agreed to the terms of the RFP. (Defendant's SUMF, ¶ 2).

ACT entered into a Staff Leasing Agreement with Third-Party Defendant AMS Staff Leasing, N.A. ("Third-Party Defendant" or "AMS") to procure workers' compensation insurance on behalf of owner-operators such as Plaintiff.[1] (Defendant's SUMF, ¶ 5). The Staff Leasing Agreement provided as follows:

> This agreement, dated December 1, 2001 (the "Agreement"), is entered into by and between Associated Contract Truckmen, Inc. ("Client Company") and AMS Staff Leasing....
>
> ...
>
> WHEREAS, AMS Staff Leasing is licensed to provide staff leasing services to companies and has agreed to provide such services to Client Company; and
>
> WHEREAS, Client Company has agreed to pay AMS Staff Leasing a fee for its staff leasing services.
>
> ...
>
> **TERMS AND CONDITIONS**

---

[1] AMS and ACT entered into two separate Staff Leasing Agreement: the first Agreement took effect on December 1, 2000, and continued for a period of twelve months, while the second Agreement took effect on December 1, 2001, and also continued for a period of twelve months. (See Staff Leasing Agreements, ECF No. 26-1.) The second Agreement is at issue in this lawsuit.

1. Relationship of the Parties....The parties further acknowledge and agree that AMS Staff Leasing is providing the services to assigned co-employees ("Workers") described in this Agreement at the request of Client Company and based upon the following representations of Client Company:

...

c. Client Company shall be solely responsible for the identification and qualification of each Worker which it desires to hire pursuant to this Agreement....

...

2. Services Provided by AMS Staff Leasing. Subject to the terms and conditions set forth herein, AMS Staff Leasing agrees to provide Client Company payroll and related functions to Workers, including the following:

...

e. continual maintenance of the workers' compensation insurance with respect to all of the Workers and in connection therewith, provision to Client Company of certificates evidencing such insurance coverage....

...

8. Insurance. AMS Staff Leasing agrees to obtain and provide Workers' Compensation and Employers Liability Insurance, including Occupational Disease Coverage, providing statutory benefits for Employers Liability Insurance. AMS Staff Leasing agrees to furnish Client Company with certificates of insurance indicating compliance within ten (10) days of each such request by Client Company.

...

10. Term and Termination. The parties hereby agree that the term of the Agreement shall continue for a period of twelve (12) months unless terminated by either party upon sixty (60) days written notice to the other party.

...

(Staff Leasing Agreement, ECF No. 73-7, pp. 1-5). AMS procured the relevant workers' compensation insurance from CNA Insurance Companies ("CNA"). (Defendant's SUMF, ¶ 6).

On May 1, 2002, Plaintiff signed a document indicating he was a member of ACT who wished to obtain workers' compensation insurance. (Plaintiff's Response, p. 3; Agreement to Bind Workers

Compensation, ECF No. 73-4). CRST asserts it provided enrollment documents to Plaintiff and remitted premium payments to ACT on Plaintiff's behalf. (Defendant's SUMF, ¶ 4). ACT subsequently provided Plaintiff with a Certificate of Insurance listing ACT and Plaintiff as the insureds and denoting National Fire Insurance Company of Hartford, a CNA entity, as the "company affording coverage." (Id., ¶ 7).

On July 21, 2002, Plaintiff was injured while unloading freight at the Dow Chemical Company plant in Pevely, Missouri. (Complaint, ¶ 7). Plaintiff filed a workers' compensation claim on July 21, 2003, for injuries to his right lower extremity, right knee, body as a whole, left knee, right upper extremity, right hand, left eye, and back. (Id.; Claim for Compensation, ECF No. 73-13, p. 1). Plaintiff received workers' compensation benefits for medical care and temporary disability from July 21, 2002, until March 2004, when Plaintiff's benefits ceased. (Complaint, ¶ 8). Plaintiff was informed that his benefits ceased in a letter dated March 8, 2004, from Pam Braud, a claims supervisor for Pacesetter Adjustment Company ("Pacesetter"), to his attorney, Nancy Mogab. (Letter from Braud to Mogab, ECF No. 73-14). The letter states Pacesetter was "handling" Plaintiff's claim "on behalf of ACT." (Id.). The letter also states Plaintiff's benefits would be discontinued "based on the fact that Mr. Brown's restrictions are not related to his work injury." (Id.).

On November 17, 2004, Mogab wrote a letter to Administrative Law Judge Kevin Dinwiddie with the Department of Labor and Industrial Relations stating as follows:

> We apparently have a problem with regard to who the insurance company is and/or who was representing the insurance company at the time of injury on the Larry Brown case. Mr. Ware has informed me that he has been advised by his client, AMS Staff Leasing, that they are not responsible for adjudicating or handling this claim. It is my understanding that there is insurance from Associated Contract Truckmen on this case but it is unclear who represents them and who the employer is.
>
> ...

> I am wondering if we cannot have a conference call to discuss who is responsible for this case in light of David Ware's claim that his client is currently not responsible.

(Letter from Mogab to Dinwiddie I, ECF No. 73-15).

On January 12, 2005, Mogab wrote a letter to Donald Balfour, an attorney for CNA, asking if CNA had an insurance policy that covered Plaintiff for his injury on July 21, 2002. (Letter from Mogab to Balfour, ECF No. 73-16, pp. 1-2). Mogab notes that she "could not even find out who the insurance coverage was with" and states that an attorney for CRST "was able to come up with [a] Certificate of Insurance indicating Hartford may be the holder of the insurance policy." (Id., p. 1).

On February 24, 2005, Donna Kilpatrick, a consumer service specialist with the Missouri Department of Insurance, wrote a letter to Plaintiff "in response to your January 19, 2005 complaint filed with our department against National Fire Insurance Co. of Hartford regarding your coverage." (Letter from Kilpatrick to Plaintiff, ECF No. 73-20). According to the letter, "CNA reports that there was a policy for AMS Staff Leasing that terminated June 20, 2002, but nothing in force today." (Id.). Thus, "the Department of Insurance at this time does not find any clear basis to continue its investigation of this matter." (Id.).

On March 8, 2005, Mogab wrote another letter to Judge Dinwiddie stating as follows:

> ...
>
> I am requesting the case be reset for prehearing for another 45 days. I have contacted Hartford Insurance and they have confirm [sic] that it is not their policy. The Certificate of Insurance issued to Mr. Brown was issued by National Fire Insurance which is a part of CNA. Missouri Dept. of Insurance contacted National Fire Insurance and they have stated that their coverage ended on June 20, 2002. However they did not produce the evidence. I have spoken with Don Balfour who represents CNA and he hopes to have a [sic] answer for me within 30 days.
>
> ...

(Letter from Mogab to Dinwiddie II, ECF No. 73-23, p. 1).

On May 16, 2005, John Wander, an attorney with the law firm of Vinson & Elkins in Texas, wrote a letter to Kilpatrick stating as follows:

> ...
>
> There are two problems with Mr. Brown's claim. First, while Associated Contract Truckmen, Inc. ("ACT") was an AMS client for portions of the CNA policy period, the AMS coverage...was terminated on June 20, 2002. If ACT or some other employer was deducting worker's compensation premiums from Mr. Brown's paycheck after June 20, 2002, it was for coverage with a carrier other than National Fire.
>
> Second, ACT is not, and never was, an insured under any CNA policy. Coverage for its employees was entirely derivative of ACT's relationship with AMS. That relationship is now the subject of a lawsuit pending in Dallas between AMS and ACT, where the central issue is whether ACT was an AMS client after May 31, 2002. Thus, even if the policy had not terminated on June 20, 2002, there are significant questions regarding whether Mr. Brown and other ACT employees had coverage after May 31, 2002 under any CNA policy issued to AMS.
>
> Finally, I may be able to shed some light on the payments apparently made for some period of time by Pacesetters Adjustment Co. As of June 20, 2002, AMS had not secured alternative coverage for its clients. Rather than inform its clients that coverage no longer existed, we believe AMS funded some portion of claims made by its co-employees by using Pacesetter to adjust the claims and then paying the claims directly rather than through insurance. In a related activity, AMS continued after June 20, 2002 to issue certificates of insurance stating that its clients had CNA insurance. CNA obtained a temporary restraining order and preliminary injunction from the United States District Court for the Northern District of Texas prohibiting this practice, and several states commenced regulatory investigations of AMS.
>
> ...

(Letter from Wander to Kilpatrick, ECF No. 73-25, pp. 1-2). Wander sent a copy of his letter to Kilpatrick to Mogab. (See id., p. 2).

On May 25, 2005, Balfour wrote a letter to Mogab stating as follows:

> ...
>
> It would continue to be our position that first of all, at no time did CNA/National Fire Insurance Company of Hartford ever provide insurance coverage for Larry Brown and/or ACT. Additionally, whatever insurance policy issued by CNA/National Fire Insurance Company of Hartford that might have been in effect for AMS Staff Leasing

was terminated in part by the request of AMS Staff Leasing well before the alleged work injury of July 21, 2002.

...

(Letter from Balfour to Mogab, ECF No. 73-27).

On July 31, 2008, Missouri Administrative Law Judge Leslie Brown ruled that Plaintiff was not insured under the Missouri Workers' Compensation Law at the time of his accident but was rather a self-employed owner-operator. (Id., ¶ 9).

Plaintiff brought this action against CRST for the negligent procurement of insurance on March 17, 2011, in the Circuit Court of Jefferson County, State of Missouri. (Notice of Removal, ECF No. 1, ¶ 1). CRST removed this action to this Court on September 1, 2011, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441. CRST filed a Third-Party Complaint for Indemnity Against Third-Party Defendant AMS Staff Leasing, N.A., Ltd. on January 13, 2012. ("Third-Party Complaint," ECF No. 13).

## **STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must

set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

CRST argues Plaintiff has failed to present evidence that, first, CRST breached a duty to or agreement with Plaintiff to provide workers' compensation coverage and, second, that Plaintiff has suffered injury as a result of that breach. CRST also argues Plaintiff's claims are barred by the relevant statute of limitations. Since the Court find CRST's statute of limitations argument disposes of Plaintiff's claims, the Court will address this argument first.

**I.     Statute of Limitations**

   **A.     Law of the Case**

Plaintiff notes that, before the removal of this matter, CRST's statute of limitations argument was before the Missouri state court on a Motion to Dismiss. The state court rejected CRST's argument and denied the Motion to Dismiss. Plaintiff asserts the "law of the case doctrine" prevents the relitigation of the state court's determination that Plaintiff's lawsuit is not time-barred.

Under Missouri law, "[t]he doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." Walton v. City of Berkeley, 223 S.W.3d 126, 128-29 (Mo. 2007) (citations omitted).

"When a case is removed from state court to federal court, the law of the case doctrine preserves any prior rulings by the state court in that case." Dow v. Jones, 311 F.Supp.2d 461, 465 (D. Md. 2004) (citations omitted). Interlocutory orders, however, "may be reconsidered, amended, reversed or vacated by the trial court at any time prior to final judgment being entered." Macke Laundry Service Ltd. Partnership v. Jetz Service Co., Inc., 931 S.W.2d 166, 176 (Mo. App. 1996) (citation omitted).

Upon consideration, the Court finds the Missouri state court's ruling on CRST's Motion to Dismiss constitutes an interlocutory order subject to reconsideration and possible reversal. See Garza v. Valley Crest Landscape Maintenance, Inc., 224 S.W.3d 61, 65 (Mo. App. 2007); Stevenson v. City of St. Louis School Dist., 820 S.W.2d 609, 611 (Mo. App. 1991). Plaintiff's request that the Court deny CRST's Motion for Summary Judgment on the basis of the law of the case doctrine will therefore be denied. See Macke Laundry, 931 S.W.2d at 176 ("A trial court is in no way bound by a prior ruling in an ongoing proceeding as the 'law of the case'"); Thornton v. Cessna Aircraft Co., 703 F.Supp. 1228, 1231 (D.S.C. 1988) (noting that a prior state court interlocutory ruling, "while to be treated with respect, is neither final nor conclusive" and is subject to reconsideration by a federal court following removal); see also Gannon Joint Venture Limited Partnership v. Masonite Corp., No. 4:07CV1242, 2008 WL 2074108 (E.D. Mo. May 14, 2008).

**B.     Application of the Statute of Limitations**

Section 516.100 of the Missouri Revised Statues provides as follows:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment....

Plaintiff's Complaint alleges a single cause of action for negligent procurement of insurance. Section 516.120 prescribes "[w]ithin five years" as the applicable period for "[a]ll actions upon

contracts, obligations or liabilities, express or implied...." Thus, a five-year statute of limitations applies to both tort and contract actions under Missouri law. This statute of limitations begins to run when a plaintiff's right to sue arises or when a plaintiff could first successfully maintain his cause of action. State ex rel. Gasconade Cnty. v. Jost, 291 S.W.3d 800, 803 (Mo. Ct. App. 2009). "[T]he capable of ascertainment test is an objective one." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 584 (Mo. 2006). The issue is not when the injury occurred or when the plaintiff subjectively learned of the wrongful conduct. Id. Damage is capable of ascertainment "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." Id. "In other words, the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" State ex rel. Marianist Province of U.S. v. Ross, 258 S.W.3d 809, 811 (Mo. 2008) (quoting Powel, 197 S.W.3d at 584).

In Branstad v. Kinstler, 166 S.W.3d 134, 137 (Mo. Ct. App. 2005), the court held that a farmer's cause of action against an insurance agent for negligent misrepresentation began to run from the date that coverage was denied to the farmer for losses to cattle he had boarded at a ranch insured by the insurance company that the agent worked for. Similarly, the court in Nuspl v. Missouri Med. Ins. Co., 842 S.W.2d 920, 923 (Mo. Ct. App. 1992) determined that a cause of action against an insurance agent for negligence in failing to obtain adequate medical malpractice insurance began to run when coverage was denied to a physician for a malpractice lawsuit.

Here, Plaintiff's cause of action against CRST for negligent procurement of insurance is subject to the five-year statute of limitations imposed by § 516.120. The relevant inquiry is when Plaintiff's damages were capable of ascertainment. See Powel, 197 S.W.3d at 584. On March 8, 2004, Plaintiff was informed that coverage for his workers' compensation benefits was ending

because his restrictions allegedly were unrelated to his work injury. Thus, for the purposes of Plaintiff's claim for negligent procurement of insurance, Plaintiff was first injured in March 2004. At this time, however, Plaintiff was unaware of which insurance company was purportedly denying coverage for his accident and was unaware that such coverage was being denied on the basis that there was no insurance policy in place at the time of his injury. Accordingly, Plaintiff's damages were not capable of ascertainment at the time of his injury.

On January 12, 2005, Plaintiff's attorney contacted CNA to ask if CNA had an insurance policy that covered Plaintiff for his injury, and as of March 8, 2005, Plaintiff's attorney acknowledged that CNA's position was that their coverage ended on June 20, 2002. At the time that CNA disavowed coverage for Plaintiff's injury on the grounds that the CNA policy was not in place at the time of Plaintiff's injury, Plaintiff could successfully maintain his cause of action against CRST for negligently failing to procure workers' compensation insurance. See Jost, 291 S.W.3d at 803. Plaintiff's damages were capable of ascertainment at this time. Viewing the facts in the light most favorable to Plaintiff, the statute of limitations began to run, at the latest, on March 8, 2005. Since Plaintiff did not file this lawsuit until March 17, 2011, Plaintiff's claims are barred by the five-year statute of limitations in § 516.120.

Plaintiff argues that, while CRST's breach of duty occurred in July 2002, "the damage resulting therefrom still occurs throughout the rest of [Plaintiff's] life." (Plaintiff Larry Brown's Memorandum in Opposition to Defendant CRST Malone, Inc's Motion and Memorandum for Summary Judgment ("Memo in Opposition"), ECF No. 78, p. 11). Thus, Plaintiff asserts the statute of limitations "remains open for the rest of [Plaintiff's] life." (Id.). In support of this assertion, Plaintiff cites statutes related to workers' compensation disability benefits and cases concerning actions against insurance companies for proceeds allegedly due under policies issued by the

companies.[2] These statutes and cases have no application to a cause of action against an insurance agent for negligence. Plaintiff provides no support for his implicit assertion that the type of insurance that an agent negligently fails to procure alters the statute of limitations for a tort claim as set out by § 516.120. Therefore, CRST's Motion for Summary Judgment will be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that CRST Malone, Inc.'s Motion for Summary Judgment (ECF No. 72) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Third-Party Defendant AMS's Motion for Summary Judgment (ECF No. 71) is **DENIED** as moot.


Dated this 3rd day of October, 2012.

                                                /s/ Jean C. Hamilton
                                                UNITED STATES DISTRICT JUDGE

---

[2]Under MO. REV. STAT. § 516.110(1), the statute of limitations governing actions against an insurance company to recover under an insurance policy is ten years. See Curnes v. Equitable Life Assurance Soc. of U.S., 6 S.W.3d 175 (Mo. Ct. App. 1999) (applying five-year statute of limitations where plaintiff's claim was based on insurance company's negligent payment of policy proceeds to the wrong beneficiary).